Michael Anderson, Davis, Calambo Appellants Mark Miguel, John Munoz, and Jesus Regalado Two weeks after the plaintiffs filed their notice of appeal in this case, this Court decided Vallis v. Ivy Hill Company, which decides the case. Vallis v. Ivy Hill was identical on its facts. In that case, claims by unionized industrial workers in Vallis v. Ivy Hill was identical on its facts. No, Your Honor. In Vallis, the facts were that the workers were allowed to eat, but only on duty. And that's recited in the factual statement of the Court's opinion. That is at 410 F. 3rd at page 1074. It's the first paragraph of the background part. It said that employees who worked on the first shift were not afforded lunch periods. Instead, they worked through lunch and were paid at their normal hourly rate for their working lunches. Now, the claim in Vallis, just like the claim here, is that these employees were entitled to off-duty mealtime. That their employers violated state law by forcing them to eat during their shifts. And in both cases, the class of employees claimed penalties prescribed under state law, not under the collective bargaining agreement. Now, what the employer has done in this case is to try to distinguish Vallis by raising a more refined argument than the one that was presented in Vallis, without really presenting a different fact pattern. In this case, Inland Paperboard argues not that the collective bargaining agreement absolutely supersedes state law. It argues that it has a defense that its collective bargaining agreement and its practice under that constitutes an adequate compliance with or exemption to or waiver of the off-duty meal requirement that the plaintiffs are claiming. Now, the employer is free to raise that as a defense in state court. But a defense that entails issues grounded in federal contract law does not support federal removal jurisdiction. And that's what the Supreme Court has been saying since Caterpillar v. Williams. If the Court were to accept Inland Paperboard's argument, it would be making Vallis v. Ivy Hill an absolute dead letter. Because any employer, including the employer in Ivy Hill, could simply refine the rhetoric of their argument to say that we have a collective bargaining agreement. We assert that that collective bargaining agreement may establish that on-duty meal periods are necessary. And therefore, the state courts cannot possibly consider the case. It must be removed to federal court, and the case must be dismissed on preemption grounds. Now, that's wrong as a matter of federal removal jurisdiction. But it's also flagrantly unfair. Because the approach the district court took in this case, in which Inland is urging to you now, is that the plaintiffs never have an opportunity to litigate the merits of the employer's defense in any court. It might not be so unfair if removal jurisdiction was more expansive, and the federal district court allowed the plaintiffs to actually rebut the defense that the employer was raising. Because what we would purport to show, had we been allowed in either state or federal court, is that objectively the nature of the work does not prevent employees at Inland Paperboard from being relieved of their duty. And that, in fact, nothing in the employer's practice under the collective bargaining agreement reaches the standard that's set by independent state law. But the district court denied our motion for discovery on that ground, and refused our attempt to argue that defense on the merits. The district court said, no, as long as the employer can raise a colorable argument which might entail the interpretation of the CBA, they win, regardless of whether or not that defense actually has factual merit or merit as a matter of federal contract interpretation. Finally, I want to direct the court to the IWC wage order, which is really at issue here. It is certainly true that under extraordinary circumstances, employers in California have the right to require workers not to take off-duty meal periods, but to eat during their shifts, as they did in Ivy Hill and in this case. But in order to satisfy that particular exemption, the employer has to meet two different provisions. First, it must show that the nature of the work prevents an employee from being relieved of all duty. And that is a criterion which does not depend on the say-so of the union and the employer in the workplace. It is an objective standard defined — The company has to give them every reasonable effort to provide a relief. It had to be interpreted in order to decide whether they were getting a meal period or not, whether eating lunch while they worked, as in the Ballas case, was the way this workplace operated, or whether that was just an emergency circumstance. Because every reasonable effort to provide a relief meant that ordinarily they wouldn't. Why doesn't that require the kind of reading of the collective bargaining agreement that under Lovatus means that we have to distinguish Ballas? Because the touchstone of liability is not whether the collective bargaining agreement has been honored. The touchstone of liability is whether an independent, objective state law standard has been met. So I would — I think you're right on the law. If California law says you have to give them a lunch period, and the collective bargaining agreement says we waive it, it's not waivable? Or if the union and the employer say in so many words in the collective bargaining agreement, we agree that the nature of the work prevents an employee from being relieved of all duty, if the California court disagrees based on its own state law minimum standards, the state court's judgment is not barred by the party's agreement in the collective bargaining agreement. What I would compare the sentence that the district court relied on to would be the innumerable provisions in the collective bargaining agreement that bore on the employer's defenses in cases like Kramer v. Consolidated Freightways or Humble v. Boeing, to take just two examples. In Kramer, the claim brought by the employees was that surveillance cameras in their locker rooms violated their reasonable expectation of privacy. And it was undeniably true that to decide what's reasonable and what's not required a state court to look at the context of the workplace. And you had to know things like what were the security issues, what was the ingress and egress provided for under the collective bargaining agreement. But the fact that a court has to consult and even interpret the collective bargaining agreement to make decisions about the context of the workplace, which bears on the employer's defense, does not render the plaintiff's state law claim into, in effect, a claim for breach of the collective bargaining agreement. It may well be that the employer in this case has honored the more limited provisions of the collective bargaining agreement. But in state court, we're going to show that the practice under that contractual section doesn't reach the threshold required by state law. I would like to save the remainder, just to finish on Humble v. Boeing, that in a case where an employee in Washington State, as in Humble, says, I wasn't given reasonable accommodation for my disability in my job, and I'm not getting a lot of questions, do you want to save any? There are any number of features of the collective bargaining agreement on which the employer might draw in mounting a defense. But the fact that that federally governed collective bargaining agreement may show up in the defense of an independent state law claim does not suffice to provide removal jurisdiction. That is the fundamental principle of Caterpillar v. Williams. They can raise those issues of federal contract interpretation when they defend this case in state court. They can't rely on the fact that they might have such a defense as an excuse to completely obliterate the state plaintiff's claim at the threshold. Thank you, counsel. Counsel? Good morning. My name is Jeff Brown. This case turns on the unique nature of the wage order language that calls us. You may be saying the same thing I'm thinking. Okay. We don't consult before we sit, so I don't know what my colleagues are thinking. I'm thinking, valis is law of the circuit. There is absolutely nothing for us to decide except whether the case is controlled by valis or must be distinguished from valis. It must be distinguished from valis. So tell me what the distinction is, and why don't you give us the kind of words that could be used if you were to win in a disposition. Valis represented a frontal attack by the employer on the application of state law itself. The employer in valis made two arguments. Wait. I don't care the arguments, and I don't care the adjectives. What I care about is what differences are there in the collective bargaining agreement or other aspects of the deal or the workplace customs that distinguish valis as the facts are stated in valis, whether that's, you know, whether they could be read differently or not, versus this case. Sure. And let me identify first the piece of the wage order that we're going to use to distinguish it, and then we're going to refer to valis, and then our case and the difference. The wage order in question, which is the same one as in valis, says that, and I'm going to read from it quickly, you're entitled to a meal period and, quote, unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered an on-duty meal period. I want to start by pointing out it's not an extraordinary circumstance. That is the presumption. Unless they're relieved of all duty, it shall be considered an on-duty meal period. That provision of the wage order, section 1101011C, goes on to say that the on-duty meal period shall be accompanied by a, quote, written agreement between the parties agreeing to such an on-duty meal period. Now, in valis, there is no evidence that there was any piece of a collective bargaining agreement which constituted such a written agreement as required by the wage order. In fact, there's a footnote in valis pointing out that the defendant conceded that because of a change in operational technology, and this is footnote 6 I'm looking at, a non-working lunch was possible. So this concept of the collective bargaining agreement being a written agreement for an on-duty meal period is not only not addressed in valis, but disavowed by the employer, who says, hey, we're not contending that. Counsel, if that is one of two requirements in that sentence, that second sentence in paragraph C, the first one says when the nature of the work prevents an employee from being relieved of all duty. The second one says when, by written agreement between the parties, an on-the-job paid meal period is agreed to. Is it your understanding that the second part of that is contested, that is, that the CBA does not constitute a written agreement? The CBA does constitute a written agreement. Okay. If it constitutes a written agreement, then the argument could simply be whether the nature of the work prevents an employee from being relieved of all duty. That wouldn't require construction of the CBA, would it? It would. And also the — Why would it require construction of the CBA? Which paragraph? Because if several paragraphs, and they are the paragraphs in Section 12 of the CBA dealing with call time, Exhibit A dealing with work rates, Section 9 dealing with hours of work. If you look at the regulations defined here — Hold on. Where are we? Looking at the excerpts of record, pages 47, Section 9 of the CBA, excerpts of record page 72, wage rates, excerpts of record page 49, call time. If you look at the — It seems like what we really look at is what they're doing, not what the documents say. Well, the second part of that, it clearly says when, by written agreement, the parties agree on the job paid meal. So that clearly would refer us or authorizes us to look at some other separate agreement. But the first one says, simply says, when the nature of the work prevents an employee from being revenged. And it doesn't say if the parties agree that, the nature of the work prevents them. Sure, and the sections of the CBA I'm pointing to are not so blunt as to be simply agreements by union and management that the nature of the work prevents duties. But if you look at the regulations and the wage order, the DLSE has defined certain criteria that we look at to determine whether or not the nature of the work prevents an employee from being relieved of all duties. Among those criteria are the consequences to the employer and the availability of other employees. Those consequences and the availability of other employees are dictated by the provisions of the CBA to which I have cited you, which tell us how much we must pay to an employee that we call in, who is available for what type of work, what employees and what classifications may perform work. These are all provisions which impact the consequences to the employer of granting an off-duty meal period. And that is one of the criteria that state law says we can look at. So I do believe you have to look at the CBA on that prong, the nature of the work. I want to finish my answer with respect to the agreement. Am I looking at the right thing here? Is all that we really have to decide? Well, no, I'm phrasing it wrong. Under 11A of the state wage order, it says, no employer shall employ a person for a work period of more than five hours without a meal period of not less than 30 minutes. Are we in a position where we concede that that first part of the sentence is not satisfied? All we do is look at the exception, except that when a work period of not more than six hours, well, no, I don't think that could be it, could it? Your Honor, that exception does not apply here. We are not – that is one of the arguments that appellants have made, is that we're in a waiver situation. That first provision, saying that a meal period may be waived in a situation of not more than six hours, is not applicable here. We're dealing with eight-hour shifts. What we're looking at is actually paragraph 11C. We have never made an argument that anybody waived the right to a meal period entirely because they worked less than six hours. That's an argument that was made in Bonilla, by the way, which appellants have cited. We have not even attempted to voice it. We're looking at paragraph C, which establishes that a meal period shall be considered an on-duty meal period unless the employee is relieved of all duty for 30 minutes. And the unique part about this case is that provision right there is in the state law, and it provides for a written agreement. So all the cases that have been cited by appellants are scenarios where an employee has an independently arising state law claim, and then the defendant tries to displace that claim. Now, under C, I think I'm a little puzzled by the same thing Judge Bybee has questioned you about. You need two things under C. The nature of the work prevents the employee from being relieved, and you need a written agreement. Let's say you have the written agreement. If the workplace procedure is to try to relieve them, and they are relieved in most circumstances, that suggests that the nature of the work does not prevent them from being relieved, rather that whether everybody showed up for work that day and they're having an especially busy time that day, that that's what prevents them from being relieved. I think that that tension is certainly one that has troubled many employers, and I think in this case it puts us back into the collective bargaining agreement. Obviously, if it is completely impossible to relieve somebody of duties during a lunch period, you have a logically incoherent wage order, right, because it's telling you you can only put someone on duty if it's impossible for them not to be on duty. Well, in some jobs that's certainly true. Airplane pilot, you can't say just let the plane do whatever it feels like for a half hour. But I think, again, the criteria for determining when the nature of the work makes it necessary for an employee to stay on the job allows some flexibility because it does allow us to look to the consequences to the employer, and at some point the burden of those or the expense of those is what makes the nature of the job such that an employee cannot be relieved of all duties. The airplane pilot is certainly an extreme example. There's a recent body of decisions in the ready mix cement context which point out that sometimes they can, sometimes they cannot be relieved based on whether or not the cement is drying and traffic conditions and whatnot. So the wage orders allow some flexibility there. In this case, those factors call you back to the CBA. I want to hit quickly on the last point about the agreement. In your question, you asked is there any contest over the written agreement. I would say, yes, there actually is. We all agree there's a written agreement. Appellants have made the point repeatedly that it does not satisfy the wage order. It is insufficient because it does not state on its face that it is revocable. That's the last sentence in C. Absolutely. Correct. And that goes to whether or not the written agreement is valid. Right. The district court thought that there was one provision that could arguably satisfy that, but it's pretty clear that the CBA does not contain something that says this provision may be revoked by the employee in writing at any time. Although the courts have recognized that the union has the ability to enter into a written agreement, and it does say that the employee may request relief, and it says that if the employee requests relief, the employer must make every reasonable effort to give it that relief. There's nothing in that CBA that relates to the meal provision and that seems to enforce specifically the last sentence in C. I think that frames why we're here, because — My statement, I think, is true, isn't it, counsel? There is a — I don't believe it is. Then tell me the provision. Okay. The provision is the relief provision — Okay. Which is which one? Tell us the page to look at. In Excerpts of Record, page 50, section 14, Employee Obligations. I'm sorry, that was 50? Yes, Your Honor. Last sentence of the paragraph, Employee whose jobs require relief shall remain at their posts until relieved by their maid or released by their supervisor. The second sentence of that clause goes on to say, If requested, a supervisor will make every reasonable effort to provide a relief. Counsel, I think my question was, there isn't anything in this CBA that suggests that an employee may, in writing, revoke the question of on-duty meals. The answer to that question is pretty obvious, isn't it? I don't think it is. Okay. Then tell me again, counsel, where it is, because I'm missing it. Sure. I'm looking for something that says, An employee who is not happy with the on-duty meal requirement here may revoke his consent to that in writing. Now, will you tell me what that provision is in here? I believe that provision, with the effect of a revocation, is exactly what I read. And if I could explain, it says, An employee who requires relief, meaning an employee who does not wish to stay at his post through the meal period, as agreed,  Okay. Where does it say meal period in that paragraph? And where does it say anything about doing it in writing? It does not limit it. It doesn't say a word about writing, does it? And it doesn't say a word about meal period. Well, the wage order does not require such a revocation to be in writing. It requires that the written agreements state in writing that it is revocable. It says, The written agreement shall state that the employee may, in writing, revoke. Looks like they both have to be in writing. To some degree, then, I suppose we've gone even more toward allowing the employee to revoke because we don't have that requirement here. Is there anything here about meal periods? I was looking for the meal period paragraph. In the revocation portion or in the CBA in general? In the collective bargaining agreement, is there anything about meal periods? Yes, page 88 of the excerpt of record, administrative ground rule number 3, paragraph 4. This is the heart of the written agreement called for by the wage order. Employees assigned to eight-hour shifts without a lunch period shall be afforded adequate time for lunch on the fly as the opportunity arises and said time will be paid for as time worked. This reports with the definition of an on-duty meal period. I think that might have been an appropriate place to say the employee may, in writing, revoke his consent to this provision at any time. It may well have been an appropriate place to say it. That would have satisfied your obligations under paragraph C. Although I still believe, knowing how these things are negotiated, when we say that section 14, employee obligations, and the language therein does not apply to meal periods, we're necessarily inferring that because it's located in a different section of the CBA. It's plain language doesn't limit it to not being meal periods, not being rest periods, or anything else. I'm not arguing that it would have been better to put it clearly after the meal period section, but I think this need, this discussion that we're having right now over whether this applies, underscores why interpretation is required, underscores why we need to look at what was this meant to be, because on its face it says any time the employee doesn't want to be on his post. Would it be better if it said meal periods? Yes, I'm not going to argue with you on that. Does that absence mean, though, that it doesn't apply? Now we're looking at the intent of the parties who negotiated this. Look, we don't have that much freedom. We have to follow valis. It's the law of the circuit. Valis did not deal with the situation where in marching through the analysis under State law, the State law requires you to look at a provision in the CBA. In this case, the State law expressly says you can have a written agreement. This CBA is the written agreement. The great distinction here is that in valis and all the other cases, the defendant has said we have a CBA, so State law doesn't apply. In this case, we are conceding the application of State law. The concession that State law applies is not a rhetorical stunt. It's not a simply more refined argument, as has been suggested. We are not trying to displace State law. We are saying that as you march through the analysis under State law, it calls upon you to look at this written agreement and decide if it is sufficient under State law. We're way over time, so unless my colleagues have more questions, I think we're done. Thank you, Counsel. Mr. Anderson, would you address a question that I put to opposing counsel? In paragraph C, as I read that second sentence in paragraph C, there are two requirements that the on-duty meal period shall be permitted, only one, when the nature of the work prevents an employee from being relieved of duty, and two, when by written agreement between the parties an on-the-job paid meal period is agreed to. Are you conceding the second one, that there is a written agreement between the parties on the on-job paid meal arrangement? No, because the final sentence is not satisfied. Okay. I didn't ask about the final sentence. Okay. But you would concede that there is a written agreement between the parties. No, because there is no written agreement between the individual employee and the employer, and it's the individual employee who possesses the State law right. What? You don't believe in unions? A collective bargaining agreement can't speak for the employee? Not when it relates to issues of minimum labor standards. This is the issue that's been running through the courts since cases like Lovatus and Kramer. So is the CBA then void? Are those provisions simply void? They're not void. It's just that the fact that there is a CBA does not cancel out my client's rights to enforce their rights under the Labor Code. So your argument here is that the CBA is utterly irrelevant because it cannot alter any of these provisions. That's right. And that's what Vallis says. Vallis says that these rights may not be waived in a collective bargaining agreement flatly. And, Your Honor, the Ninth Circuit in Vallis is not necessarily the final word on California law, but what we have since Vallis is the explicit endorsement of the Ninth Circuit's analysis by the California Courts of Appeal. And in a 28J letter, I provided the Court with Zavala, a case from the Second District of the California Court of Appeal, which embraces the Vallis analysis. And it says in a case where the collective bargaining agreement actually provides identical or even more generous meal period provisions than state law does, that even in that case, the individual employees cannot be relegated to the grievance arbitration mechanisms of the labor contract because since minimum statutory labor standards are at issue here, the parties could not waive the required meal periods or rest breaks. Now, Your Honor, if I may, the — there's no question that if Inland Paperboard were an airline company, that they might have a valid defense to this action by saying that the nature of the work prevents employees from being relieved of all duty. And in that sense, they would have — In the collective bargaining agreement, pretty much does acknowledge that by saying it may be necessary to eat lunch on the fly and you can't leave your post. The union must agree to that because they thought that's the way it is in a — That's true. But the union's agreement to that provision does not displace the right of the California courts to make a contrary decision when they judge whether the nature of the work prevents the employee from being relieved of all duty. And that's even separate from the glaring problem that the CBA does not provide for So what you have in this case is a defense that's not valid on its merits, but the court really should dispose of this case on purely jurisdictional grounds by saying that the merits of that defense are for the state court. The employer is free to raise its argument based on the CBA once this case is properly remanded to the state court. But Plaintiff's claim here is not a claim for breach of the collective bargaining agreement. It's a claim for a violation of an independent state law standard. And we prevail or fail in state court on that basis. I want to ask you a question without a long answer, okay? It sounds like you're saying reverse the summary judgment, remand it to the state court. Yes. But you're asking it to two orders. Yeah. Reverse the summary judgment primarily because the district court lacked federal question jurisdiction over this case. Thank you, counsel. Thank you. Thank you. Miguel versus Inland Taper Board is submitted. United States versus Alvarez Hernandez is submitted. And that we are adjourned. All rise. This court, this session, now stands adjourned.
judges: Kleinfeld, Bybee, Whaley